DOUGLAS D. ROBERTS, Plaintiff-Appellee v. CARROLL E. SWAIN, JR., Individually
and in his position as Lieutenant, University of North Carolina Police
Department; J.B. McCRACKEN, Individually and in his position as Lieutenant,
University of North Carolina Police Department; ALANA M. ENNIS, Individually
and in her position as Public Safety Director and Chief, University of North
Carolina Police Department and UNIVERSITY OF NORTH CAROLINA,
Defendant-Appellants

No. COA96-656

(Filed 15 July 1997)

1. **Sheriffs, Police, and Other Law Enforcement Officers § 21 (NCI4th)— police officers—individual capacities—sovereign immunity inapplicable**

In plaintiff's action for assault and battery, false imprisonment and malicious prosecution against defendant university police officers in their individual capacities, the trial court did not err in denying defendants' motion for summary judgment based on sovereign immunity where plaintiff's complaint alleged defendants acted willfully, unlawfully and without probable cause against plaintiff and plaintiff forecast sufficient evidence that the officers acted outside their official duties.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.**

2. **Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— selling basketball tickets—illegal arrest—civil rights action—Fourth Amendment rights—qualified immunity inapplicable**

It was not error for the trial court to deny defendants' motion for summary judgment based on qualified immunity on plaintiff's 42 U.S.C. § 1983 claim that defendants, an arresting officer and the police chief, violated his rights under the Fourth Amendment of the U.S. Constitution by arresting him pursuant to an alleged violation of a city ordinance for selling basketball tickets for an unknown price outside a basketball arena where the ordinance prohibited door to door or place to place solicitation and no reasonable persons would have concluded that plaintiff's actions violated the ordinance, and where there was no record evidence that plaintiff's actions would have led a reasonable person to believe that plaintiff was engaged in the prohibited act of "peddling" without a license in violation of N.C.G.S. § 105-53 or "scalping" in violation of N.C.G.S. § 14-344.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.**

3. **Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)—civil rights claim—illegal arrest—resisting arrest charge as unreasonable search and seizure—no qualified immunity**

A university police officer who illegally arrested plaintiff for solicitation to sell two basketball tickets outside a basketball arena was not entitled to qualified immunity on plaintiff's § 1983 claim that his subsequent arrest for resisting an officer constituted an unreasonable search and seizure since a reasonable officer in his position would have known that he had no probable cause to arrest plaintiff, that plaintiff was entitled to resist the arrest, and that plaintiff's refusal to give his social security number did not constitute resisting arrest. Nor was a second officer who assisted in the arrest at the police station entitled to qualified immunity, even if he did not know that the first officer lacked probable cause for the initial arrest, since a reasonable officer should have known that plaintiff's refusal to give his social security number was insufficient to establish probable cause for the resisting arrest charge.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.**

4. **Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— civil rights claim—arrest for assault on officer—unreasonable search and seizure—qualified immunity—summary judgment**

Summary judgment was inappropriate on the question of whether defendant police officers were entitled to qualified immunity on plaintiff's § 1983 claim that his arrest for assault on an officer constituted an unreasonable search and seizure where the evidence presented fact questions as to whether plaintiff used reasonable force to resist an illegal arrest and whether the officers reasonably should have known that they had violated plaintiff's right not to be arrested for the assault without probable cause.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.**

5. **Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)—civil rights claim—excessive force—qualified immunity—summary judgment inappropriate**

Summary judgment was inappropriate on the question of whether defendant police officers were entitled to qualified

immunity on plaintiff's § 1983 claim that the officers violated his Fourth Amendment rights by using excessive force to restrain him when he resisted their attempts to handcuff him where the evidence presented fact questions as to the level of force used by plaintiff and by the two officers and whether a reasonable officer in the positions of defendants should have known the force used was excessive, if it was in fact excessive.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.**

**6. Appeal and Error § 418 (NCI4th)— issue not argued in brief—abandonment**

An issue as to whether the trial court erred by denying a university police chief qualified immunity on plaintiff's § 1983 claim that she is responsible, under a theory of supervisory responsibility, for excessive force allegedly used by two officers was abandoned on appeal where defendants did not offer any argument discussing application of the doctrine of qualified immunity to this claim.

**Am Jur 2d, Appellate Review §§ 544-551.**

**7. Pleadings § 376 (NCI4th)— motion to amend—answer— withdraw admission—futility—matter of law**

It was not error for the trial court to deny defendants' motion to amend their answer to withdraw an admission that a police officer did not have probable cause to initially arrest plaintiff where the amendment would have been futile since the trial court had held as matter of law that there was no probable cause to arrest plaintiff, and this ruling was affirmed on appeal.

**Am Jur 2d, Pleading §§ 306-338.**

Appeal by defendants from order entered 28 March 1996 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 19 February 1997.

*Bayliss, Hudson & Merritt, by Ronald W. Merritt, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas J. Ziko and Assistant Attorney General Sylvia Thibaut, for defendant-appellants.*

ROBERTS v. SWAIN

[126 N.C. App. 712 (1997)]

McGEE, Judge.

This is an appeal from an order denying defendants' motion for summary judgment on claims asserted by plaintiff against defendants Swain, McCracken and Ennis in their individual capacities. Defendants contend these claims are barred by sovereign and qualified immunity.

Plaintiff filed this action on 3 July 1995, and defendants answered on 6 September 1995. On 13 March 1996, defendants moved to amend their answer and also moved for summary judgment. By order entered 28 March 1996, the trial court denied the motion to amend and allowed the motion for summary judgment as to all claims except the following: (1) plaintiff's claim for assault and battery against defendants Swain and McCracken in their individual capacities; (2) plaintiff's claim for false imprisonment against defendants Swain and McCracken in their individual capacities; (3) plaintiff's claim for malicious prosecution against defendant Swain in his individual capacity; and (4) plaintiff's Fourth Amendment claim based on excessive force and unreasonable search and seizure against defendants Ennis, Swain and McCracken in their individual capacities. Defendants appeal the denial of their motion for summary judgment on these claims and the denial of their motion to amend their answer.

Evidence presented by both parties at summary judgment shows the following events. On the evening of 18 January 1995, Lt. Carroll E. Swain, Jr. of the University of North Carolina at Chapel Hill (UNC-CH) Police Department, arrested Douglas D. Roberts for solicitation to sell basketball tickets when he discovered Roberts standing on a sidewalk outside the Dean Smith Student Activities Center (Smith Center) attempting to sell two tickets to the UNC-CH v. Virginia basketball game scheduled that evening. Roberts resisted, contending he was doing nothing wrong. Swain handcuffed Roberts, performed a pat-down, and then took him to the UNC-CH Police Department where he removed the handcuffs, performed another pat-down, and questioned Roberts. When asked to give his social security number, Roberts refused. Swain and Lt. J.B. McCracken, who was present at the office, both told Roberts he would be taken before a magistrate if he failed to provide the number.

The parties' evidence of the following events varies somewhat. When Roberts again refused to give his social security number, Swain tried to handcuff him again. Roberts protested verbally. Swain testified he then reached for Roberts' arm but is not sure whether he

ROBERTS v. SWAIN

[126 N.C. App. 712 (1997)]

made contact. Roberts testified Swain grabbed his shirt lapel and pushed him back against a table. Roberts testified at this point he resisted by grabbing Swain's lapel. Swain testified Roberts grabbed him "about the throat and collar." McCracken intervened and a scuffle ensued. Roberts testified both officers held him up in the air while he had Swain's head between his arms putting pressure on it. Both Roberts and Swain testified that Swain and McCracken then restrained Roberts by holding him face down on the floor. Swain testified he told Roberts to put his hands behind his back or he would "spray" him but Roberts refused. While Roberts was in this position, Swain testified he sprayed him in the face with pepper spray. Roberts testified Swain placed his knee on his right temple and sprayed him directly in the face.

The officers then handcuffed Roberts and took him to a magistrate who issued arrest warrants for: (1) "solicitation" in violation of Chapel Hill Ordinance § 13-2, which requires a permit to sell goods and services by going door to door or place to place without prior appointments; (2) resisting, delaying, and obstructing an officer under N.C. Gen. Stat. § 14-223; and (3) assault on a police officer under N.C. Gen. Stat. § 14-33(b). Roberts was then released. All three charges were subsequently dismissed by an assistant district attorney.

Ordinarily, a denial of summary judgment is not immediately appealable. *Herndon v. Barrett*, 101 N.C. App. 636, 639, 400 S.E.2d 767, 769 (1991). However, a denial of a summary judgment motion based on sovereign and qualified immunity is immediately appealable. *Id.*

## I. State Law Tort Claims

[1] Defendants first contend the trial court erred by denying their motion for summary judgment on plaintiff's assault and battery and false imprisonment claims against defendants Swain and McCracken in their individual capacities and on plaintiff's malicious prosecution claim against Swain in his individual capacity. They contend the doctrine of sovereign immunity bars these claims.

We first note "[a]s a general practice, plaintiffs designate in the caption of the complaint whether the defendants have been sued in their 'official' or 'individual' capacity." *Whitaker v. Clark*, 109 N.C. App. 379, 383, 427 S.E.2d 142, 144, *disc. review denied and cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993). Here, plaintiff's complaint caption states Swain and McCracken are each sued "individually."

**ROBERTS v. SWAIN**

[126 N.C. App. 712 (1997)]

In *Epps v. Duke University*, 116 N.C. App. 305, 447 S.E.2d 444 (1994) (*Epps I*), this Court stated:

> [I]f a public officer is sued in his individual capacity, he is entitled to immunity for actions constituting mere negligence, . . . but may be subject to liability for actions which are corrupt, malicious or outside the scope of his official duties.

*Epps I*, 116 N.C. App. at 309, 447 S.E.2d at 447 (citations omitted). In *Epps I*, this Court held the plaintiff's allegations sufficient to state a claim against a defendant in his individual capacity when the allegations put the defendant on notice that he "may have acted beyond the scope of his official duties in authorizing and/or supervising an autopsy allegedly involving procedures not routinely performed and seemingly unrelated to the cause of death." *Id.* at 311, 447 S.E.2d at 448; *see also Epps v. Duke University*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849 (*Epps II*), *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). Similarly, in *Ingram v. Kerr*, 120 N.C. App. 493, 462 S.E.2d 698 (1995), this Court held a plaintiff stated a cause of action against a police officer in his individual capacity when he alleged the officer's actions "were intentional and reckless" and "outside the scope of his duties." *Id.* at 497-98, 462 S.E.2d at 701.

In his assault and battery and false imprisonment claims against Swain and McCracken, plaintiff alleges these two defendants acted willfully and their actions were without probable cause or otherwise unlawful. In his malicious prosecution claim against Swain, plaintiff alleges Swain acted "with implied malice toward Plaintiff," with "reckless disregard of Plaintiff's rights and without probable cause." As in *Epps I* and *Ingram*, these allegations are sufficient to give notice that plaintiff is seeking to recover against defendants Swain and McCracken individually on his tort claims.

We also find plaintiff has forecast sufficient evidence that Swain and McCracken acted outside the scope of their official duties in regard to these tort claims. In sum, at this stage of the proceedings, sovereign immunity does not bar plaintiff's assault and battery and false imprisonment claims against defendants Swain and McCracken in their individual capacities and plaintiff's malicious prosecution claim against defendant Swain in his individual capacity. *See Epps II*, 122 N.C. App. at 211, 468 S.E.2d at 855. The trial court correctly denied defendants' motion for summary judgment on these claims.

## II. Claims under 42 U.S.C. § 1983

Defendants next contend the trial court erred by denying their motion for summary judgment on plaintiff's 42 U.S.C. § 1983 claims against defendants Ennis, Swain, and McCracken in their individual capacities. Specifically, they contend defendants Ennis, Swain, and McCracken were entitled to qualified immunity on these claims.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982). Resolution of whether a government official is insulated from personal liability by qualified immunity "turns on the 'objective legal reasonableness' of the [official's] action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 530 (1987) (quoting *Harlow*, 457 U.S. at 818-19, 73 L. Ed. 2d at 410-11).

The right purportedly violated by the official must be clearly established in a particularized and relevant manner. *Anderson*, 483 U.S. at 640, 97 L. Ed. 2d at 531. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Qualified immunity protects conduct which was reasonable although mistaken. *Hunter v. Bryant*, 502 U.S. 224, 229, 116 L. Ed. 2d 589, 596 (1991).

This Court has summarized the relevant analysis as follows:

[R]uling on a defense of qualified immunity requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that his actions violated that right. While the first two requirements involve purely matters of law, the third may require factual determinations respecting disputed aspects of the officer's conduct. . . . Thus, "[i]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial."

*Lee v. Greene,* 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994) (quoting *Pritchett v. Alford,* 973 F.2d 307, 312-13 (4th Cir. 1992)) (internal citations omitted).

Plaintiff alleges Ennis, Swain, and McCracken violated his rights under the Fourth Amendment of the U.S. Constitution by engaging in unreasonable search and seizure and by using excessive force. We address each alleged violation of rights.

A. Unreasonable Search and Seizure
Probable Cause to Arrest
Swain and Ennis

[2] Plaintiff contends defendant Swain violated his Fourth Amendment rights against unreasonable search and seizure when Swain arrested him under Chapel Hill Ordinance § 13-2 (Ordinance § 13-2) without probable cause that he had violated the ordinance or had committed any other crime. He contends defendant Ennis violated his Fourth Amendment right not to be arrested without probable cause when she authorized Swain to charge persons under Ordinance § 13-2 for selling basketball tickets at the Smith Center.

The Fourth Amendment of the U.S. Constitution protects individuals from unreasonable searches and seizures. *State v. Harrell,* 67 N.C. App. 57, 60, 312 S.E.2d 230, 234 (1984). This Fourth Amendment protection includes the right not to be arrested without probable cause. *Id.* at 61, 312 S.E.2d at 234. Thus, we address whether, under the specific facts and circumstances, there was probable cause for plaintiff's arrest under law clearly established at the time. In regard to plaintiff's activities at the Smith Center, we hold, as a matter of law under the undisputed facts, there was not probable cause.

Probable cause for arrest exists if:

at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.

*Beck v. Ohio,* 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964). Plaintiff was charged with violation of Ordinance § 13-2. At the time of plaintiff's arrest, this ordinance provided:

Sec. 13-2. Permit required.

No person shall for commercial purposes sell, or solicit orders for, goods and services by going from door to door or from place to place without prior appointments with the residents or occupants thereof, without first having obtained a permit therefor from the town manager or manager's designee. (Ord. No. 0-84-77, § 1, 11-12-84)

Chapel Hill, N.C., Code § 13-2.

We first evaluate Swain's conduct. There is no evidence of record that Swain had any information showing plaintiff was engaged in prohibited activity under Ordinance § 13-2. The evidence shows only that Swain observed plaintiff attempting to sell two basketball tickets for an unknown price outside the Smith Center. In fact, Swain does not purport to have made any inquiries or to have obtained any information leading him to believe plaintiff was engaged in door to door or place to place solicitation. There is simply no evidence showing that the facts and circumstances within Swain's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing plaintiff was violating Ordinance § 13-2. Thus, under law clearly established at the time of plaintiff's arrest, as a matter of law and as determined by the trial court, there was no probable cause to charge and arrest plaintiff for violation of this ordinance and plaintiff had a clearly established right not to be charged and arrested under this ordinance.

As to Ennis, at the time she authorized arrests for the selling of basketball tickets under this ordinance, she did not limit her authorization to the activities specifically prohibited under the ordinance. That is, she did not direct Swain to arrest only those who were soliciting "by going from door to door or from place to place." This is so in spite of the fact that a single act of selling a small number of basketball tickets in a single location is not explicitly prohibited under the ordinance. In light of the fact that she knew Swain planned to apply the ordinance in this fashion, she had an obligation to make sure it was applied in a constitutional manner. There is simply no evidence showing that the facts and circumstances within Ellis' knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person to believe one engaged in the simple act of selling basketball tickets outside the Smith Center, without more, was violating Ordinance § 13-2. Thus, under clearly established law at the time she authorized Swain to charge persons

**ROBERTS v. SWAIN**

[126 N.C. App. 712 (1997)]

for this conduct, as a matter of law, plaintiff had a clearly established right not to be charged and arrested under Ordinance § 13-2 for this conduct.

Furthermore, solicitation to sell tickets in and of itself, without more, is not a crime under any statute or ordinance of record. For instance, there is no evidence of record which would have led a reasonable person to believe plaintiff's conduct violated N.C. Gen. Stat. § 105-53, another provision relied upon by Swain to support his conduct. At the time of plaintiff's arrest, G.S. § 105-53 required any person "engaged in business or employed as a peddler" to obtain a license from the Secretary of Revenue "for the privilege of peddling goods." G.S. § 105-53(a) (1995). The statute defines "peddler" as "a person who travels from place to place with an inventory of goods, who sells the goods at retail or offers the goods for sale at retail, and who delivers the identical goods he carries with him." G.S. § 105-53(a).

This statute also requires a person "engaged in business as an itinerant merchant" to obtain a license from the Secretary of Revenue. G.S. § 105-53(b). "Itinerant merchant" is defined as "a merchant, other than a merchant with an established retail store in the county, who transports an inventory of goods to a building, vacant lot, or other location in a county and who, at that location, displays the goods for sale and sells the goods at retail or offers the goods for sale at retail." G.S. § 105-53(b). The statute does not apply, *inter alia*, to a person who sells "his own household personal property." G.S. § 105-53(e)(1)(b). This statute makes it a misdemeanor offense for a person to, *inter alia*, "fail to obtain a license as required by this section, "fail to display the license" if the person is an "itinerant merchant," or "fail to produce the license" upon request if the person is a "peddler."

Here, there is no evidence of record showing Swain had any facts or information which could reasonably lead him to believe plaintiff was a peddler or itinerant merchant as defined in this statute. He had no probable cause to believe plaintiff was "engaged in business or employed as a peddler," *see* G.S. § 105-53(a), or was a "merchant . . . who transports an inventory of goods" in the manner described under this statute. *See* G.S. § 105-53(b). In addition, a reasonable person could only have concluded, absent other information, that plaintiff was selling "his own household personal property," *i.e.*, two basketball tickets owned by him, and was therefore exempt under the statute. *See* G.S. § 105-53(e)(1)(b).

ROBERTS v. SWAIN

[126 N.C. App. 712 (1997)]

There is also no record evidence showing plaintiff's actions could reasonably have been prohibited by N.C. Gen. Stat. § 14-344, the "scalping" statute. This statute provides:

Any person . . . shall be allowed to add a reasonable service fee to the face value of the tickets sold, and the person . . . which sells or resells such tickets shall not be permitted to recoup funds greater than the combined face value of the ticket, tax, and the authorized service fee. This service fee may not exceed three dollars ($3.00) for each ticket . . . . Any person . . . which sells or offers to sell a ticket for a price greater than the price permitted by this section shall be guilty of a Class 2 misdemeanor.

G.S. § 14-344 (1993). There is no evidence of record that Swain obtained any information, prior to arresting plaintiff, of the price at which plaintiff was offering to sell his two tickets. Thus, he had no information reasonably leading him to believe plaintiff was violating this statute. In fact, this statute explicitly authorizes the sale of tickets within the price range described in the statute. Thus, under the facts evident to him at the time of plaintiff's arrest, Swain had no probable cause to arrest plaintiff for violation of G.S. § 14-344 and plaintiff had a clearly established right not to be arrested for this offense.

In sum, we hold, as a matter of law, that plaintiff had a clearly established right not to be arrested for selling two basketball tickets outside the Smith Center on 18 January 1995. The remaining issue under qualified immunity analysis is whether a reasonable person in the positions of defendants Ennis and Swain would have known their actions violated plaintiff's Fourth Amendment rights. As we have previously stated, this portion of the qualified immunity analysis is not appropriate for summary judgment resolution "[i]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances." *Lee*, 114 N.C. App. at 585, 442 S.E.2d at 550. However, if there are no genuine issues of historical and material fact needing resolution, the issue may be resolved as a matter of law at summary judgment. *See e.g.*, *Hunter*, 502 U.S. at 228, 116 L. Ed. 2d at 596 (making reasonableness determination at summary judgment when facts undisputed).

Here, as a matter of law under the undisputed facts, Swain and Ennis were not entitled to summary judgment based on qualified immunity because a reasonable person in these officers' positions would have known, under the circumstances, their actions violated

ROBERTS v. SWAIN

[126 N.C. App. 712 (1997)]

plaintiff's right not to be arrested without probable cause. Thus, the trial court did not err by denying defendants' motion for summary judgment on these claims.

### B. Unreasonable Search and Seizure
### Swain and McCracken
### Conduct at UNC-CH Police Department

We now address plaintiff's unreasonable search and seizure claim in regard to Swain's and McCracken's conduct at the UNC-CH Police Department. Plaintiff contends that, because he was legally resisting an illegal arrest, there was no probable cause for his arrest for: (1) resisting, delaying or obstructing a public officer in the discharge of his duties (G.S. § 14-223) (resisting charge) and (2) assault on an officer (G.S. § 14-33(b) (assault charge). For this reason, plaintiff contends he had a clearly established Fourth Amendment right not to be arrested for these offenses and that reasonable officers in Swain's and McCracken's positions would have known this. Since they did not, he contends they are not entitled to qualified immunity.

### 1. Resisting an Officer Charge

[3] Plaintiff asserts there was no probable cause to arrest him for resisting an officer under G.S. § 14-223 because he was legally resisting an illegal arrest. Every person has the right to resist an unlawful arrest. *State v. Mobley*, 240 N.C. 476, 478, 83 S.E.2d 100, 102 (1954). However, a person "may use only such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty." *Id.* at 479, 83 S.E.2d at 102. "[A]n 'arrest' does not necessarily terminate the instant a person is taken into custody; arrest also includes 'bringing the person personally within the custody and control of the law.'" *State v. Leak*, 11 N.C. App. 344, 347, 181 S.E.2d 224, 226 (1971). In *Leak*, this Court held the arrest of the defendant terminated when he was delivered to the jailer and properly confined. *Id.*

Here, plaintiff's arrest began at the Smith Center and continued while he was at the UNC-CH Police Department and during the time he was taken before the magistrate. Since we have determined Swain did not have probable cause to arrest plaintiff for selling the basketball tickets, his arrest of plaintiff for this conduct was illegal. Since plaintiff's arrest was continuing while he was at the UNC-CH Police Department, at the time he refused to give his social security number, we conclude he was lawfully resisting the illegal arrest for "solicitation" of basketball tickets.

In addition, both the citation and Swain's affidavit list plaintiff's refusal to give his social security number as the basis for the resisting charge. We find his mere refusal to provide his social security number insufficient to establish probable cause for the charge of resisting arrest. This situation is similar to that in *State v. Allen* in which we held an arrest for resisting an officer illegal when the defendant merely argued with the officer and protested the confiscation of his liquor. *State v. Allen*, 14 N.C. App. 485, 491-92, 188 S.E.2d 568, 573 (1972). We stated: " '[M]erely remonstrating with an officer . . . or criticizing an officer while he is performing his duty, does not amount to obstructing, hindering, or interfering with an officer[.]' " *Id.* at 491, 188 S.E.2d at 573 (quoting 58 Am. Jur. 2d, *Obstructing Justice*, §§ 12 and 13, pp. 863, 864).

Furthermore, we have more recently stated that "[c]ommunications simply intended to assert rights, seek clarification or obtain information in a peaceful way are not chilled by section 14-223." *Burton v. City of Durham*, 118 N.C. App. 676, 681, 457 S.E.2d 329, 332, *disc. review denied and cert. denied*, 341 N.C. 419, 461 S.E.2d 756 (1995). "Only those communications intended to hinder or prevent an officer from carrying out his duty are discouraged by this section [G.S. § 14-223]." *Id.* Plaintiff's verbal refusal to provide his social security number did not hinder or prevent Swain and McCracken from completing the arrest and citation of plaintiff. We hold there was no probable cause for the resisting an officer charge under G.S. § 14-223.

However, qualified immunity could operate to shield Swain and McCracken from plaintiff's damages suit "if 'a reasonable officer could have believed' " plaintiff's arrest " 'to be lawful, in light of clearly established law and the information the [arresting] officers possessed.' " *Hunter*, 502 U.S. at 227, 116 L. Ed. 2d at 595 (quoting *Anderson*, 483 U.S. at 641, 97 L. Ed. 2d at 532). Here, Swain was present during the initial phase of the arrest and knew the facts and circumstances supporting his decision to arrest plaintiff under Ordinance § 13-2. Since a reasonable officer in his position should have known he had no probable cause to arrest plaintiff under Ordinance § 13-2 or any other law for selling the tickets under these circumstances, a reasonable officer in his position would also have known plaintiff was entitled to resist the arrest. Thus, under the undisputed facts, we hold, as a matter of law, Swain is not entitled to qualified immunity on plaintiff's unreasonable search and seizure claim regarding his arrest under G.S. § 14-223.

The situation is somewhat different for defendant McCracken. Since he was not present at the Smith Center, he reasonably may not have known Swain lacked probable cause for the arrest under Ordinance § 13-2. The question, then, is whether an officer in McCracken's position could reasonably have concluded, under clearly established law, that plaintiff's mere refusal to give his social security number was not sufficient to establish probable cause for the resisting charge. Since *State v. Allen* clearly held it illegal to charge and arrest someone for resisting based on mere remonstrations or criticisms of an officer, we hold, as a matter of law under the undisputed facts, a reasonable officer should have known, under clearly established law, that plaintiff's conduct did not constitute resisting an officer under G.S. § 14-223. McCracken is not entitled to qualified immunity in regard to plaintiff's unreasonable search and seizure claim regarding his arrest under G.S. § 14-223.

## 2. Assault on an Officer Charge

[4] Plaintiff also contends Swain and McCracken are not entitled to qualified immunity on his unreasonable search and seizure claim regarding his arrest for assault on an officer under G.S. § 14-33(b). He contends he had a clearly established right under the circumstances not to be arrested without probable cause for this offense. He also contends summary judgment on this issue is not proper because the facts present a jury issue as to whether reasonable officers in Swain's and McCracken's positions should have known there was no probable cause for this offense. We agree.

N.C. Gen. Stat. § 14-33(b) provides, in pertinent part:

(b) . . . any person who commits any assault, assault and battery, or affray is guilty of a Class 1 misdemeanor if, in the course of the assault, assault and battery, or affray, he:

\* \* \*

(8) Assaults an officer . . . when the officer . . . is discharging or attempting to discharge his official duties.

G.S. § 14-33(b)(8) (1993).

A person resisting an illegal arrest is not resisting an officer within the discharge of his official duties. *State v. Anderson*, 40 N.C. App. 318, 322, 253 S.E.2d 48, 51 (1979). Since the initial arrest for "solicitation" at the Smith Center and the attempt to arrest plaintiff for resisting an officer were both illegal, plaintiff was entitled to use

a reasonable amount of force to resist. *See Mobley*, 240 N.C. at 479, 83 S.E.2d at 102. Under this analysis, if the amount of force used by plaintiff was unreasonable and rose to the level of an assault under G.S. § 14-33(b)(8), then the officers had probable cause to arrest him under G.S. § 14-33(b)(8). However, Swain and McCracken did not have probable cause to arrest plaintiff for assault on an officer if, at the time, plaintiff was using a reasonable amount of force to resist the illegal arrests for "solicitation" and for resisting an officer. Furthermore, if the amount of force used by plaintiff was reasonable, he had a clearly established right, as a matter of law, not to be arrested for a violation of G.S. § 14-33(b)(8).

We have previously held a defendant justifiably used reasonable force to resist an illegal arrest when he grabbed an officer's shirt pocket. *Allen*, 14 N.C. App. at 492, 188 S.E.2d at 573. Here, the parties' evidence diverges regarding the level of force used by plaintiff to resist Swain's attempt to handcuff him in the UNC-CH Police Department. Plaintiff contends he grabbed Swain's shirt lapel and applied pressure to Swain's head only after Swain and McCracken had lifted him off the floor. In contrast, Swain contends plaintiff grabbed him by the throat and collar and had Swain's head between his arms applying pressure.

This divergence of evidence requires resolution at trial and may not be resolved at summary judgment. Under plaintiff's version of the facts, a reasonable fact finder could conclude the force he used was reasonable. In contrast, under defendants' version of the facts, a fact finder could reasonably conclude the force used by plaintiff was unreasonable and that Swain and McCracken had probable cause to arrest plaintiff for assault. Similarly, the question of whether Swain and McCracken reasonably should have known, under the facts found, that they had violated plaintiff's right not to be arrested without probable cause is one to be resolved at trial, not at summary judgment. *See Lee*, 114 N.C. App. at 585, 442 S.E.2d at 550. At this stage of the proceedings, neither Swain nor McCracken is entitled to qualified immunity on plaintiff's unreasonable search and seizure claim regarding his arrest for assault on an officer.

## C. Excessive Force Claim

### 1. Swain and McCracken

**[5]** Plaintiff further contends Swain and McCracken are not entitled to qualified immunity on his claims that they violated his Fourth Amendment rights by using excessive force to restrain him.

Claims that law enforcement officers used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness" standard because the Fourth Amendment protects against such physically intrusive conduct. *Graham v. Connor*, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 454 (1989).

When attempting a lawful arrest, an officer has the right to use reasonable force to subdue the person arrested and the person arrested has no right to resist. N.C. Gen. Stat. § 15A-401(d)(1) (1988); *State v. Burton*, 108 N.C. App. 219, 226, 423 S.E.2d 484, 488 (1992), *appeal dismissed and disc. review denied*, 333 N.C. 576, 429 S.E.2d 574 (1993). Our Supreme Court has stated:

> The law will protect an officer who is attempting to make a lawful arrest or to make a lawful search, from consequences of his acts done necessarily in the performance of his duty. This principle cannot be invoked, however, in defense of an officer who in attempting to make an unlawful arrest or an unlawful search, commits an assault, with or without a deadly weapon. For the consequences of his unlawful acts, he must be held responsible to the same extent and with the same result as others who do not profess to act under the law.

*State v. Simmons*, 192 N.C. 692, 695, 135 S.E. 866, 867 (1926).

Given this precedent, we hold plaintiff had a clearly established right, under the facts and circumstances shown, not to be subjected to use of excessive force by Swain and McCracken. However, the remaining portions of qualified immunity analysis in regard to this issue may not be resolved at this stage of the proceedings. There is a dispute of fact regarding the level of force used by plaintiff and by Swain and McCracken in the UNC-CH Police Department. In turn, the question of whether the force used by Swain and McCracken was excessive relates directly to the degree of force used by plaintiff to resist their attempts to handcuff him. Furthermore, the issue of whether a reasonable officer in the positions of Swain and McCracken should have known the force used was excessive, if it was in fact excessive, is a matter for resolution at trial because it involves unresolved questions of fact and concerns the reasonableness of the officers' conduct under the circumstances. *See Lee*, 114 N.C. App. at 585, 442 S.E.2d at 550. These matters are more properly reserved for trial and may not be resolved at this stage of the proceedings. The trial court correctly denied defendants' motion for summary judgment on this claim.

ROBERTS v. SWAIN

[126 N.C. App. 712 (1997)]

## 2. Ennis

**[6]** Defendants contend the trial court erred by denying Ennis qualified immunity on plaintiff's claim under 42 U.S.C. § 1983 that she is responsible, under a theory of supervisory liability, for the excessive force allegedly used by Swain and McCracken. In their brief, defendants only analyze the sufficiency of plaintiff's substantive proof of the elements of this claim. They do not offer any argument discussing the application of the doctrine of qualified immunity to this claim. This portion of their appeal is deemed abandoned. *See* N.C.R. App. P. 28(a) (1997).

## III. Denial of Motion to Amend Answer

**[7]** Defendants contend the trial court erred by denying their motion to amend their answer. This issue is not related to sovereign and qualified immunity, and defendants have not demonstrated how any substantial right would be affected if this issue is not reviewed now. *See Smith v. Phillips*, 117 N.C. App. 378, 384, 451 S.E.2d 309, 314 (1994). However, in the interest of judicial economy, we exercise our discretion and address this issue. N.C.R. App. P. 2 (1997); *Smith*, 117 N.C. App. at 384, 451 S.E.2d at 314.

In their answer, defendants admit plaintiff's allegation that Swain did not have probable cause to arrest plaintiff at the Smith Center. The proposed amendment sought to withdraw this admission.

A trial court need not grant a motion to amend if the amendment would be futile. *See IRT Property Co. v. Papagayo, Inc.*, 112 N.C. App. 318, 327-28, 435 S.E.2d 565, 570-71 (1993), *rev'd on other grounds*, 338 N.C. 293, 449 S.E.2d 459 (1994). Here, the trial court held, as a matter of law, that there was no genuine issue of material fact regarding the circumstances of plaintiff's arrest and that, as a matter of law, defendant Swain had no probable cause to arrest plaintiff. As discussed above, we herein affirm this ruling and hold, as a matter of law, Swain had no probable cause to arrest plaintiff at the Smith Center. Our decision on this lack of probable cause is not based on defendants' admission of no probable cause to arrest in their answer. Rather, it is a legal conclusion based on the undisputed facts. As the amendment sought by defendants would be futile, the trial court properly denied the motion to amend.

## IV. Conclusion

The trial court's order is affirmed.

Affirmed.

Judges GREENE and WALKER concur.